UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONALD GILMORE, as Personal
Representative of the Estate of Vera
Gilmore,

            Plaintiff,

vs.                              Case No.  2:10-cv-99-FtM-29DNF

LIFE CARE CENTERS of AMERICA, INC.;
LIFE CARE CENTER of AMERICA, INC. of
TENNESSEE; LEE COUNTY MEDICAL
INVESTORS, LLC, agent of Life Care
Center of Estero,

            Defendants.
_____

**OPINION AND ORDER**

    This matter comes before the Court on Defendants' Motion to Dismiss and to Compel Arbitration (Doc. #3) filed on February 16, 2010, and their Memorandum of Law in Support of their motion, filed on March 1, 2010 (Doc. # 6.)  Plaintiff filed a response on August 23, 2010 (Doc. #20.)  The Court held an evidentiary hearing on October 4, 2010, as to the motion to compel arbitration, and heard testimony from plaintiff Ronald Gilmore and received exhibits from both sides.

**I.**

    On April 21, 2003, Vera Gilmore (Ms. Gilmore) signed an Advance Health Care Directive for Vera C. Gilmore and a General Durable Power of Attorney in Hemet, California.  (Pl.'s Exh. 1.)  As relevant to this case, this document provided that her son

Ronald G. Gilmore was given power of attorney and named as Ms. Gilmore's legal representative, effective when her primary physician determined she was unable to make her own health care decisions. Ms. Gilmore remained in California until mid-2007, and there came a time when her primary physician determined she was unable to make her own health care decisions. Ms. Gilmore was placed in an assisted living facility and a hospital in California, and was then brought to Florida where Ronald Gilmore resided.

Ms. Gilmore lived with her son Ronald for approximately one week. On August 24, 2007, she was moved to Summerville of Bonita Springs, an assisted living facility in Bonita Springs, Florida. Ronald Gilmore signed the Resident Agreement and all other intake paperwork because his mother was not mentally competent to do so. (Pl.'s Exh. 2.) Medical evaluations on September 10, 2007, found Ms. Gilmore to appear to be her stated age (87 years old), distraught, anxious, frail, with dementia, and oriented to person but confused. The assessment of Ms. Gilmore included a number of physical ailments as well as depression with anxiety and dementia of the Alzheimer's type, with late onset, with delusions. She was to continue various medications, including Risperdal, an anti-psychotic medication. (Pl.'s Exh. 4.)

On September 18, 2007, Ms. Gilmore was hospitalized at North Collier Hospital for chest discomfort and/or abdominal pain. On September 29, 2007, Ms. Gilmore was discharged from the hospital

and transferred to Life Care Centers of Estero (LCCE), a nursing facility providing long term care. Ronald Gilmore was not present when his mother was moved to Life Care Centers of Estero and did not participate in the intake process. Upon arrival, Ms. Gilmore signed a two-page Voluntary Agreement for Arbitration; while the line for "Signature of Legal Representative" was checked, it was never signed. Ms. Gilmore's signature also appears on a one-page Patient Admission Agreement & Acknowledgement (sic), a two-page Informed Decision Regarding Nursing Home Placement, a one-page Authorization for Treatment, a one-page Patient Information form, and a one-page Attachment K form. (Pl.'s Exh. 3.) Upon Ms. Gilmore's admission to LCCE, staff filled out an Initial Data Collection Tool/Nursing Service form. Whoever evaluated Ms. Gilmore initially checked "oriented" but then crossed that out and checked "short term memory loss". (Pl.'s Exh. 4.)

Ronald Gilmore was the only witness who testified at the evidentiary hearing, and described his mother as being in and out of lucidity and having no capacity to understand complex issues or the meaning of contract provisions. He also testified that his mother had been hallucinating.

Ms. Gilmore's medical records indicate that she suffered from atypical psychosis. She had been prescribed an anti-psychotic medication, Risperdal, prior to September 10, 2007 and continued to take this medication upon admission to LCCE. (Pl.'s Exh. 4.) A

progress note, however, reflects that a psychologist interviewed Ms. Gilmore on October 5, 2007, found her capable of informed medical decisions, and questioned the need for Risperdal since he found no evidence of psychosis or disturbing behavior. (Defs. Exh. A.)

Ms. Gilmore fell and fractured her hip on October 22, 2007, and was re-admitted to North Collier Hospital. She quickly decompensated in the hospital. On October 24, 2007, Ms. Gilmore was assessed as having "been declining into dementia over the past couple of years," as "probably having some delusional behavior," and in a current state of dementia. She was described as being 87 years old, chronically ill, was inappropriately responsive verbally, and was disoriented and confused. Ms. Gilmore was given medication for comfort, and died peacefully in the hospital. No cause of death was determined. (Pl.'s Exh. 4.)

## II.

Defendants assert that plaintiff is bound by the arbitration agreement signed by Ms. Gilmore on September 29, 2007 as part of her admission process. Plaintiff responds that his mother lacked the mental capacity to enter into the arbitration agreement, and that the agreement is, therefore, void and unenforceable.

Section 2 of the Federal Arbitration Act (FAA) provides in pertinent part:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration

> a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. According to the allegations in the Complaint and the evidence presented at the evidentiary hearing, the Arbitration Agreement in this case was part of the admission process into a nursing facility owned by Tennessee companies and operated by those companies in Florida. The dispute in this case is therefore one "involving commerce" within the meaning of 9 U.S.C. § 2, <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 273-78 (1995), and the FAA applies to this case.

"While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 130 S. Ct. 1758, 1773 (2010)(citations and internal quotation omitted); <u>see also</u> <u>Becker v. Davis</u>, 491 F.3d 1292, 1298 (11th Cir. 2007)("A party cannot be forced to arbitrate any dispute that the party has not agreed to submit to arbitration.") Thus, "[t]he FAA reflects the fundamental principle that arbitration is a matter of contract. . . . The FAA thereby places arbitration agreements on an equal footing with other contracts, . . ." <u>Rent-A-Center, W., Inc. v. Jackson</u>, 130 S. Ct. 2772, 2776 (2010)(citations and internal quotations omitted).

In deciding whether the parties agreed to arbitrate, the Court

applies ordinary state-law principles that govern the formation of a contract. First Options v. Kaplan, 514 U.S. 938, 944 (1995). Federal courts sitting in diversity apply the substantive law of the state in which the case arose. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Florida law applies the law of the state where the last act necessary to make a binding agreement takes place. D.L. Peoples Grp., Inc. v. Hawley, 804 So. 2d 561, 563-64 (Fla. 1st DCA 2002). Here, both signatures on the arbitration agreement were executed in Florida on the same date, and therefore Florida law applies as to the contract issues.

Under Florida law, a person lacks the mental capacity to enter into a contract only if she is unable to understand the effect and significance of her actions, i.e., is unable to comprehend the effect and nature of the transaction. Long v. Moore, 626 So. 2d 1387, 1388 (Fla. 1st DCA 1993)(citing Hartnett v. Lotauro, 82 So. 2d 362 (Fla. 1955)). Mental capacity at the time the contract is executed is the relevant focus. Parks v. Harden, 130 So. 2d 626, 628 (Fla. 2d DCA 1961). If there is mental weakness which does not reach this level, and is not accompanied by evidence of the imposition of undue influence or some other inequitable circumstance, the contract will not be voided. Long, 626 So. 2d at 1388-89 (citing Hassey v. Williams, 174 So. 9 (1937)). Under Florida law, there is a presumption that the contracting person is competent, and this must be overcome by a preponderance of the

evidence establishing the person was incapable of comprehending the nature and effect of the contract. Saliba v. James, 196 So. 832, 835 (Fla. 1940). The testimony of a lay witness is admissible evidence as to a person's competency, even if it is contradicted by medical testimony. In re Estate of Hammermann, 387 So. 2d 409, 411 (Fla. 4th DCA 1980).

Based upon the testimony of Ronald Gilmore and the documentary items admitted as evidence, the Court finds that plaintiff has established by a preponderance of the evidence that Ms. Gilmore did not comprehend the effect and nature of any of the contracts she signed during the admission process at LCCE on September 29, 2007. On August 24, 2007, just one month prior to her admission to LCCE, Ms. Gilmore was admitted to a different facility and asked to sign a similar set of intake paperwork. At that time, she was deemed incapable of making her own healthcare decisions, so her son Ronald, as her legal representative, signed the paperwork. (Pl.'s Exh. 2.) Her son testified that, at the time, she was in and out of lucidity and having hallucinations. Ms. Gilmore's medical records indicate that she had been declining into a state of dementia for several years. (Pl.'s Exh. 4.) On September 10, 2007, a physician's assistant evaluated Ms. Gilmore and made the following findings "General Appearance: appears stated age, distraught, anxious, frail, dementia. Mental status: oriented to person, confused." He also noted that Ms. Gilmore was suffering

from Alzheimer's and recommended that she continue taking the anti-psychotic medication, Risperdal.  (Pl.'s Exh. 4.)

These facts taken together with her age, physical ailments, history of dementia, confusion and disorientation, as well as her consistent use of anti-psychotic medication, lead the Court to find that Ms. Gilmore did not understand the nature and effect of the contracts she signed on September 29, 2007, including the arbitration agreement currently at issue.  While she may have understood that she was being admitted into a nursing facility, plaintiff has established by at least the preponderance of the evidence that she did not understand the contractual documents she was asked to sign.  Because Ms. Gilmore lacked the mental capacity to enter into the contracts she signed on September 29, 2007, the Court finds that the arbitration agreement is unenforceable. Therefore, defendants' motion to compel arbitration will be denied.

**B.**

Defendants, alternatively, seek to dismiss the complaint. Some of the arguments in the motion to dismiss appear valid, although defendants asserted the matters could not be fully addressed until the arbitration issue was decided. Plaintiff did not respond to this aspect of the motion. At the least, it appears that the Complaint fails to identify a contract, and cannot plausibly state a breach of contract claim in light of plaintiff's position regarding Ms. Gilmore's mental competency. Additionally,

it does not appear that a basis for liability has been pled as to defendants other than Lee County Medical Investors, LLC, and the duties of each which were breached appear to be insufficiently pled.  Further, there must be complete diversity among the parties in order for the Court to exercise its jurisdiction over this matter.  28 U.S.C. § 1332(a).  The Complaint is somewhat inconsistent in this regard.  Plaintiff indicates that Life Care Center of Estero is merely a fictitious business name of Lee County Medical Investors, LLC, a Tennessee limited liability company.  Yet, plaintiff also alleges that Life Care Center of Estero is a Florida corporation.  (Doc. #2, ¶ 4.)  If Life Care Center of Estero is indeed a Florida corporation, the Court lacks jurisdiction.  Accordingly, the Court will give plaintiff fourteen days to file an amended complaint.

Accordingly, it is now

**ORDERED**:

1.  Defendants' Motion to Compel Arbitration (Doc. #3) is **DENIED**.

2.  Defendants' Motion to Dismiss (Doc. #3) is **DENIED** as **MOOT**.

3.  Plaintiff shall file an Amended Complaint within **FOURTEEN (14) DAYS** of the date of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __7th__ day of October, 2010.

_____
JOHN E. STEELE
United States District Judge